The opinion of the Court was delivered by
Inglis, A. J.
The plaintiff by lease in writing, let certain premises to the defendant for a term of years, and covenanted that presently after the commencement of the term he would put the demised premises, in “thoroughly tenantable repair,” and the defendant covenanted to pay a certain annual rent therefor, in quarterly instalments, and to secure the payment according to his covenant executed a penal bond, and a mortgage of real property. Upon the expiration of the first quarter, the defendant refused to pay the stipulated instalment, on the ground that the plaintiff had not performed his covenant to repair. The plaintiff thereupon filed his present bill, on 5th October, 1866, to enforce the mortgage security by foreclosure and sale. The defendant immediately thereafter, on the same day, apprehending that the covenants of the respective parties to the lease might be regarded as independent, brought an action in the Common Pleas to recover damagés for the plaintiff’s breach of his covenant to repair. In this state of the controversy between them, these parties with a view, it is presumed, to arrest the litigation, came to an agreement, which was duly reduced to writing on 9th October, 1866, to submit their respective suits and the subject-matter of each to the arbitrament of the Hon. W. A. Pringle, and *47 to abide by “ bis award in the premises as final and conclusive upon the parties.” On the 1st November following, the arbitrator rendered his, award, finding that the plaintiff had not performed his covenant to put the premises in “ thoroughly tenantable repair,” but that such performance was not a condition precedent to the defendant’s liability for the payment of the instalments of the rent, at the days limited therefor in the covenants of the lease. Estimating the damages to the defendant, from the plaintiff’s breach of his covenant, in the form of a diminution of the annual value to the defendant, and directing as his adjustment of “ all matters then pending between them, arising out of lease,” “ including the suit in equity and at law commenced by the said parties respectively,” that until the plaintiff should repair as required by his covenant, the defendant should pay him a rent reduced to the annual value as so diminished, and that the plaintiff as first in default upon the whole contract, should pay all costs of the pending suits. The plaintiff declining for reasons stated, to stand to the award, the same with the submission has been pleaded by the defendant to the further maintenance of the suit in equity, and upon the hearing, the plea was sustained and the bill dismissed. The appeal calls in question the judgment sustaining the plea, by impugning the legal validity of the award, on the several grounds, that it exceeds the submission and determines matters not referred; that it does not conclude the matters that were referred and so is not final, and that it professes on its face to be founded on reasons of law, which are not law; and also insists that even if valid, its legal effect was not to dispose of the suit, and it therefore constitutes no sufficient reason for dismissing the bill, but could only avail at most, for ascertaining the amount due by the defendant at the institution of .the suit, or at the hearing, for payment of which, the plaintiff was entitled to enforce the mortgage security.
*48 , If the award exceeds the submission, and brings into the adjustments made by it, matters not referred, it is, at least to the extent of the excess, void. But it is not necessarily wholly void. If the decision which it contains of matters not referred can be disengaged, and separated without impairing or disturbing the determination therein of the matters which were referred, the excess may be rejected as surplusage and the award so far as supported by the submission will stand. (Billings on Awards, 96, 148.) The submission here was, in effeet, of the suits in equity and at law, which had been then just instituted by the parties respectively, and the matters of dispute involved in them. Neither of these suits could, at the time of submission, involve any default of the defendant therein, which had not accrued prior to its institution. The complaint is that the award, not content with ascertaining the defendant’s damages theretofore, by reason of the plaintiff’s breach of his covenant to repair, by a reduction of, or discount against the rent then due, directs a continuing reduction after the same rate, until the covenanted repairs shall be made, thus embracing time then to come, and matters not yet brought into controversy. If there be herein really an excess, it is yet one that may be readily separated and rejected, without .at all impairing the effect of the award proper. In any future suit for foreclosure, founded upon the failure of the defendant to pay the instalments of rent falling due after .the submission, it will only be necessary to reply to a plea of the award, by showing that herein the award goes beyond .the submission, and that the arbitrator was not thereby authorized to determine such matter. But does the award in this respect exceed the submission ? It must be remembered that the defendant had an estate for a term of years in the premises, and was entitled in his. action upon the plaintiff’s covenant to repair, to. recover compensation for the damage to his whole estate by the *49 breach of this covenant. This the award gives him. The discontent is with thte method of computing the compensation. Is this method justly liable to exception? The solution of this inquiry involves the consideration of another of the objections, made by the appeal to the validity of the award, that professing on its face to conform to the law, it departs therefrom.
Every controversy touching civil rights, necessarily in-. volves questions both of law and of fact, and the ordinary tribunals are so organized as to provide for determining each according to strict rules of right. Arbitration is a method of settling their disputes which parties choose to substitute for the regular tribunals. By a submission of matters in controversy, which does not clearly provide otherwise, arbitrators are therefore invested with at least as large powers of investigation and determination as are possessed by the tribunals which they supplant. But more than this, the very purpose in transferring the controversy to such private forum is, that its fair adjustment may not be obstructed or trammelled by the technical rules of legal science, that considerations may be admitted as elements both in the matter and mode of composition, which could not find access to the judgments of the regular Courts. The aim is that substantial justice between the parties may be effected. To reach this result, uncertainties and doubts of law are to be solved by the arbitrators and their conclusions herein became law to the parties, pro hac vice. The rigor of extreme rules may be moderated by the requirements of fair dealings and good conscience. (2 Story’s Eq. 1454; Nichols vs. Roe, 3 Mylne & Keene, 438; Billings on Awards, 55-58.) The terms of submission may indeed more or less confine the range of the arbitration, as for example to the finding of the facts alone, or the facts being conceded to the application of the law thereto, and in any case to a strict observance of technical rules. In the *50 present instance there is no such restriction. It is true however, as contended, that even under a general submission, if the award professing on its face to conform to the law, clearly departs therefrom, — if volunteering to disclose the grounds of law upon which its conclusions rest, it manifestly mistakes the law, and the conclusions fail, with the reasons assigned therefor, it cannot be sustained. “ If arbitrators,” says Mr. Justice Story, “refer any point of law to judicial inquiry, by spreading it on the face of their award, and they mistake the law in & palpable and material point, the award will be set aside.” (2 Eq. Jur. 1455; and see also Richardson vs. Nourse, 3 Barn. & Ald. 240; Cramp vs. Symons, 1 Bing. 104; Bennet et al. vs. Wilson, 3 D. P. C. 220; Archer vs. Owen, 9 D. P. C. 341.) It is not enough, however, that their mode of reaching a determination is different from that which is usual with the regular Courts, if the determination itself in its substance and on the merits seems to be fair and just. The reasoning-may be unsatisfactory, and yet the conclusions thereby attained be correct. (Vivian vs. Champion, 1 Ld. Raym. 1125.) The error of law, which will avoid an award must be very clear, and such as has plainly conducted the judgment of the arbitrator to a wrong conclusion, one but for which he must have made an award, different in its substantial results. Has any such error been committed here ?
It was necessary that the arbitrator should determine, not only whether the plaintiff had broken his covenant to repair, but also if he had, what damage the defendant had sustained thereby. How did the law require that this damage should be estimated ? In an early case Lord Holt said, “we always inquire in these cases, what it will cost to put the premises in repair, and give so much damages.” And this is perhaps the more usual mode of estimation. But in a recent case it has been suggested that the “true *51 rule would be, tbe loss which the party damaged would sustain if he sold his estate in the market.” (Smith vs. Peat, 9 Excheq. R. 161.) The present defendant had a term of state for years in these premises.. The difference which the want of th.e covenanted repairs would make between the annual rent which he could get in the market, if he desired to transfer or assign his lease, and that which he had covenanted to pay, fairly represents his damage. In other words, the excess of the rent which he had agreed to pay, for the repaired premises over the annual value in the market of their use and occupation in their unrepaired state, was in-fact the damage he had suffered. This mode of making the computation has this advantage, that it gives to the plaintiff the option of arresting the damage, and the compensation therefor, at any time by making the covenanted repairs, and furnishes an incentive to do so, that the agreement may be thus restored to its original operation. Tbe arbitrator’s plan of adjustment in this particular effects substantial justice, and in a manner convenient to both parties. It does not appear to this Court that the award herein exceeds the submission, or that there is any such palpable or material error of law as must appear on the face of the award in order to the successful impeachment of its validity. The arbitrator had by the terms .of submission ample authority to solve for the purposes of the case the doubts, arising out of the diversity of judicial decisions, as to the correct rule of estimating and providing for the compensation to which the defendant was entitled, and was at liberty to adopt any fair and equitable plan that would in- this particular effect substantial justice. The suits at law and in equity concerned the same subject-matter — the lease and its covenants; and the reference of both in the one submission — consolidated them into one, and this rendered a blended adjustment eminently proper.
But, as an award may go beyond the submission, it may, *52 on the other hand, fall short of its requirements. “ And if the arbitrator does not decide all the matters submitted to him, and over which he has jurisdiction, his award is bad.” (Billings on Awards.) So it is further objected here that the award is not final. This is a mistake: it concludes and finally disposes of all the matters that were referred — the pending suits, and the rights and duties to be enforced in them. Though the quarter’s rent was in arrear, and the plaintiff’s performance of his covenant to repair was not a condition precedent to the defendant’s liability, and the condition of defeasance in the mortgage was therefore forfeited, yet, inasmuch as the plaintiff was “first in the transgression,” the arbitrator considered that he ought not further to maintain his suit in equity, and should pay such costs as had already been incurred therein. This disposed of the equity suit, and all that was involved in it at the time of submission. The whole compensation sought by the defendant in his action of covenant is ascertained, the mode of its payment by an annual discount against or reduction of the rent is prescribed, and the costs of the action are provided for. Thus, this action, with all that was involved in it, is finally disposed of. And these constituted the only matters referred by the terms of the submission. There was nothing in these terms which required the arbitrator to prescribe in detail the particulars of the work which is implied in the description, “thoroughly, tenantable repair.” The verdict of a jury or the decree of a Court, would not, in either of the suits referred, have done this. It was essential for the purposes of his award that the arbitrator should ascertain whether the plaintiff had put the premises in “ thoroughly tenantable repair,” and, if not, then in some way satisfactory to his own mind, how far he had failed to do so. But it was neither necessary, nor expected, that he should have a professional survey of the premises and a plan and specifications of *53 repair prepared. The arbitrator does, in fact, state his judgment as to the import of the description, “thoroughly tenantable,” in as definite terms as, without such details, is practicable. Nor is it any just exception that he has not precluded the possibility of future controversies to arise out of the mutual covenants of the lease, inasmuch as only existing controversies were embraced in the submission. There seems indeed an inconsistency in complaining now that the award does not adjust or prevent disputes after-wards to arise, and so is not final, and, a little while since, that it does devise, and embrace in its provisions, a scheme for precluding' such controversies by contriving a mode of adjustment that it is to run with the currency of the lease itself, and so exceeds the submission. In the judgment of this Court, it is not open to either exception.
Upon the sixth and seventh grounds of appeal it is only necessary to say that the present suit was itself one of the matters referred to the arbitrator, and his award would not have been complete if he had not finally disposed of it. The instalments of rent, fallen due in the interval between the submission and the hearing of the cause, constituted no part of the default upon which the suit was brought; and in directing the disposition of the suit, the arbitrator could not, without exceeding the submission, take into consideration the convenience of allowing it to stand for enforcing the plaintiff’s rights in the contingency of such default. It is considered that the award was designed to put an end to the existing litigation, as it ought to have done, and that such was its effect. And being here pleaded against the further maintenance of this suit, the dismissal of the bill followed as the logical result.. The Circuit decree is affirmed,, and the appeal is dismissed.
Dunkin', C. J., and Warduaw, A. J., concurred.

Decree affirmed.